STATE *v.* J. K. BOYNTON.

(Filed 24 May, 1911.)

1. **Intoxicating Liquors—License—Specific Places of Sale—Evidence, Prima Facie—Corroborative.**

   Our statute, Revisal, sec. 2060, relating to the sale of intoxicating liquors in prohibition territory makes the issuance to or possession of a United States revenue license by one charged with the offense *prima facie* evidence of his guilt; and under an indictment charging the unlawful sale at a certain numbered place in a city, a license to the accused to sell at another number therein may be considered in evidence as a relevant circumstance with other evidence tending to establish a sale elsewhere in the city, that the defendant had the intoxicating liquors on hand and was in a condition to violate the law.

2. **Same—Liquors on Hand.**

   Upon trial on indictment for the sale of intoxicating liquors at a certain city number, testimony that the accused had and kept

liquors on hand in other portions of the city is a relevant circumstance tending to show that he had it on hand and was prepared and equipped to make the illegal sale charged in the bill of indictment, and to be considered by the jury with other evidence tending to show that he had sold such liquor at the place charged in the indictment.

## 3. Same—Other Sales.

The rule of evidence that one illegal sale of intoxicating liquors should not be received as any evidence that another such sale had been made, applies where the sales are entirely separated and distinct transactions, the one having no fair or reasonable tendency to establish the other, but inapplicable when it tends to show that the defendant, accused of violating the prohibition law at a certain city number, with evidence tending to show such violation there, kept the spirituous liquor elsewhere in the city, or under his control, for the purpose of making illegal sales.

## 4. Same.

Upon indictment for violating the prohibition law, the possession of liquors by the accused, at the time of the offense charged, is always a circumstance admissible against him, and in general the circumstances under which liquors are kept, and even that they are kept at other places or in other rooms, may be shown.

## 5. Same—Instructions—"Place" of Offense Charged.

There being direct evidence that the prisoner, indicted for a violation of our prohibition law in a city, sold intoxicating liquors at the time and place therein charged in the indictment, and a United States revenue license being introduced by the State, which, upon its face, permitted him to sell at a different place in the same city, a charge by the court that the revenue license was *prima facie* evidence that the accused was "retailing and selling spirituous liquor under the provisions of that license, at the place specified and mentioned in the indictment," is correct, when it clearly appears from the other relevant portions of the charge that the "place" referred to was the city and not the particular location therein.

## 6. Same.

The accused being tried for the unlawful sale of intoxicating liquor to a certain person, and at a certain time and place specified in the indictment, and there being evidence that he had sold to others at the same place, and that this was his place of business, where such intoxicants were kept under his control, a charge of the court which confines the evidence of the sale to the

others, and to the liquor being kept in his place of business, etc., to corroboration of the evidence of the specific offense, is proper.

**7. Intoxicating Liquors — Witness — Paid Detective — Interest in Result—Evidence Scrutinized.**

For conviction upon the evidence of a paid detective of violating the prohibition law, the jury should be instructed to make proper allowance for the bias likely to exist in one having such an interest in the outcome of the prosecution, and with reference to any other relevant facts calculated to influence the testimony of the witness, leaving very largely to the discretion of the trial judge the exact terms for the expression of the rule.

**8. Same—Charge as a Whole—Construction.**

When the accused is being tried for an unlawful sale of intoxicating liquor, and conviction is sought upon the testimony of a paid detective employed for such purposes, an instruction which correctly states the weight with which such testimony should be received is not erroneous because of an expression that it is commendable for a detective or sheriff, etc., to use all reasonable and proper means in the apprehension of those who are violating the law, and when they do so in that spirit it will enable the law to place its hands upon its offenders and violators.

**9. Instructions—Charge as a Whole—Interpretation.**

A part of the instructions to the jury excepted to is not reversible error when the charge as a whole is correct.

**10. Intoxicating Liquors—Instructions—Part Error—Correct as a Whole—Jury—Fairness of Consideration.**

Upon trial under an indictment for violating the prohibition law, the judge charged the jury that if any of the jurors were prohibitionists they should try the case as if they were anti-prohibitionists, and *vice versa.* *Held,* while this of itself might have been misleading, it was not reversible error when in the other pertinent parts of the charge it appeared that he directed the jury, in apt and forceful language, to divest themselves of all prejudice and give the defendant a fair and impartial trial under the law, and on the testimony alone, it being evident that the jury must have understood the charge correctly.

APPEAL from *Councill, J.,* at the November Term, 1910, of BUNCOMBE.

Criminal action, charging illicit sale of whiskey in the city of Asheville to one C. M. Laughter, tried on appeal from the police justice, before his Honor, *W. B. Councill,* judge, and a jury, at Superior Court of Buncombe County, November Term,

1910.   On the part of the State, C. M. Laughter, the alleged purchaser of the whiskey, testified as follows: "That on 6 October, 1910, he bought a pint of rye liquor from the defendant, at No. 33 South Main Street, and paid him 75 cents therefor, giving in detail the circumstances under which he purchased. On cross-examination he said that he was a carpenter and had given up this business, accepted employment to work up liquor cases as a detective for the city of Asheville; that he got a salary which was paid him by the city of $70 a month, as a special policeman for such purpose and was furnished with money from time to time to purchase the whiskey, which money he never accounted for and was not required to account for; that this money was furnished him by Colonel Lusk, and witness used it as he was told to do." The State, over defendant's objection, then offered in evidence a list of names from the Collector of Internal Revenue office, certified as being a list of those to whom Government license had been sold to retail spirituous liquors in Asheville, N. C., the certificate as directly relevant to defendant's case being in terms as follows:

"Record of special taxpayers in Buncombe County, Fifth District of North Carolina.   Name: Boynton, J. K.   R. L. D. Asheville, Blomberg Building, Passenger Station.   July, 1910. Amount of taxes, $25.   Issued June 30, 1910.   Serial Number, 145784.   Transferred, 20 August, 1910, to 28 W. College Street, Asheville.   (Signed) Geo. H. Brown, Collector of Internal Revenue, Fifth District of North Carolina.

"Certified Form, 7541, issued 19 September, 1910, in lieu of stamp which was lost."

Defendant, specifying his objection, as follows:

a. Because defendant was not charged with being a liquor dealer.

b. That the place mentioned in said list is not the place where the prosecuting witness testified that he had purchased whiskey from the defendant.

c. That the paper introduced shows the defendant was not authorized to sell, under said license, at any place other than No. 28 College Street, Asheville, N. C.

The State, over defendant's objection, was allowed to show

by Watt Britt, J. B. Bryson, and others, that at some time prior to this alleged sale and within twelve months, defendant had whiskey in his possession in different quarters and in places in Asheville, N. C., and that at the business places under control and management of defendant, to wit, at the American Saloon on College Street and at Lexington Avenue and at 28 College Street, whiskey was being sold and drunk, and the record further shows, "That the State was permitted to introduce many other witnesses to show that they knew the defendant; that they had been in his places of business and had seen whiskey and beer in his places often." There was verdict of guilty, and from judgment on the verdict the defendant appealed, and assigned for error the rulings of the court on questions of evidence and to the charge of the court as indicated by various exceptions, properly noted.

*Attorney-General T. W. Bickett and Assistant Attorney-General G. L. Jones for the State.*

*G. S. Reynolds and J. G. Merrimon for defendant.*

HOKE, J., after stating the case. Our statute, section 2060, Revisal, provides in effect, "That the possession of or issuance to any person of a license to manufacture, sell, or rectify whiskey by the United States Government, in any county, city, or town where such manufacture, sale, etc., are prohibited by law, shall be *prima facie* evidence that the person having such license or to whom the same was issued is guilty of doing the act permitted by such license in violation of the laws of the State," etc. The occasion for the enactment of such a law and its application to a state of facts not dissimilar to those presented here were considered and passed upon in *S. v. Dowdy,* 145 N. C., p. 432, and it was there held that the United States license was properly admitted in evidence. True, the questions chiefly discussed and dealt with in *Dowdy's case* were, (1) as to whether the certificate there presented came within the term license, used in the statute; (2) whether the act was in excess of the power vested in the Legislature to confer artificial weight on a given kind of proof, and (3) whether it was in violation of the right of the accused to be confronted with the witnesses

against him.  An examination of the facts, however, will dis-
close that while the license specified a particular place, to wit,
104 Queen Street, it was admitted as evidence and given its
proper weight as a relevant circumstance, tending to establish .
an illegal sale in the city of New Bern.  The case, therefore, is
a direct authority in support of his Honor's ruling, and on fur-
ther reflection we are satisfied that on this point also *Dowdy's*
*case* was well decided.  By the terms of the statute the
license is evidence that the holder is doing the act that it per-
mits, selling whiskey by retail, in the county of Buncombe and
city of Asheville, 28 College Street, and this is a relevant cir-
cumstance, tending to establish a sale elsewhere in Asheville,
as it shows or tends to show that the defendant had the whiskey
on hand and was in a condition to violate the law by making the
sale as charged, the sale to C. M. Laughter.  It is testimony in
support of direct evidence of such sale.    Just as much so as
if he had shown to have a barrel of whiskey at 28 College
Street and was unlawfully engaged in selling it.  And for the
same reason the ruling must be upheld by which the oral evi-
dence was admitted.  It tended to show that defendant had
and kept whiskey on hand, in prohibited territory, and was
prepared and equipped to make the illegal sale charged in the
bill of indictment.  There are, as defendant contends, many de-
cisions of the court to the effect that one illegal sale should not be
received as evidence that another such sale had been made, but
this rule exists where they are entirely separated, distinct trans-
actions, the one having no fair or reasonable tendency to estab-
lish the other, and should not obtain where the testimony, as it
does in this case, tends to show that defendant habitually kept
whiskey on hand or under his control for the purpose of making
illegal sales.    The position is in accord with right reason and
is well supported by authority.    In 7 Encyclopedia of Evidence,
p. 760, the author says: "Of course, the possession of liquors
by the defendant, at the time of the offense charged, is always
a circumstance admissible against him, and in general the cir-
cumstances under which liquors are kept, and even that they
are kept at other places or in other rooms, may be shown."
And there are numerous decisions in support of this statement.

*S. v. Illsley,* 81 Iowa, 49; *S. v. Welch,* 64 New Hampshire, 525; *S. v. Pfefferlee,* 36 Kansas, 90.

Counsel for defendant, in his earnest and able argument before us, insisted that reversible error was committed, to his client's prejudice, when his Honor, among other things, charged the jury, in reference to the effect of the United States revenue license, as follows: "The possession or issuance to any person of a license to manufacture, rectify, or sell spirituous liquors under section 2060 of The Code of North Carolina, laws of this State, makes the possession of such license *prima facie* evidence that the person having it, or to whom the same was issued, guilty of doing an act permitted by such license, forbidden by the laws of this State. In other words, the introduction of this paper, stating that he had a license issued to him for the purpose of selling whiskey, makes it *prima facie* evidence that he is retailing and selling spirituous liquor under the provisions of that license, at the place specified and mentioned in the indictment." The objection being that as the license authorizes a sale of whiskey at 28 College Street, it should only be given the statutory effect as evidence at that place, and that the portion of the charge in question erroneously allows this same probative effect at the place of the alleged illegal sale, to wit, No. 33 South Main Street; but we do not think the position correctly interprets his Honor's charge. In telling the jury that the statute made the United States license *prima facie* evidence that the defendant was a retail liquor dealer at the "place specified and mentioned in the bill of indictment," the court was not referring to 33 South Main Street, the place of the alleged illegal sale, nor was he ignoring the place specified in the license. "The place specified and mentioned in the bill of indictment" referred to the city of Asheville, and, so taken and understood, the charge is correct. The fact that he held a United States license to retail liquor at 28 College Street, Asheville, N. C., was made by the statute *prima facie* evidence that he was there engaged in that business, and this was only recognized and allowed as a circumstance tending to support the direct evidence of the alleged illegal sale. To show that this was all the effect given the statutory presumption, the charge

of the court immediately proceeds: "That, however, is not sufficient to make him guilty of the charge of selling liquor, as charged in the bill of indictment, to the State's witness, C. M. Laughter; and while you can consider this license as evidence tending to show that the defendant is exercising the privilege of selling liquor in Asheville, as specified, yet, before the State can convict him, it must go further and satisfy you from the evidence, beyond a reasonable doubt, that he sold Laughter liquor, and you may consider the license, as before stated, as being evidence tending to show that he is a liquor dealer. The law makes it *prima facie* evidence that he is, in law, a dealer in spirituous liquor, under the provisions of the license referred to. But the State must go a step further and satisfy you from the evidence beyond a reasonable doubt that he sold to Laughter, before you can convict him of selling liquor under this indictment." And like effect was given the oral evidence objected to. Speaking to this testimony, the court in part said: "The State further contends that other evidence has been introduced that defendant sold spirituous liquor to others than Laughter, and the court has held it to be competent as a corroborating circumstance, or circumstances, tending to show that he is engaged in handling spirituous liquors, and the evidence which has been introduced tending to show that he was at the places of business, claimed to be the defendant's places of business, and that liquor was seen there under his control and in his possession, if there was such evidence, was for the purpose of corroborating the contention of the State that he is a liquor dealer and had liquor under his control and possession, and you can consider it for that purpose only, but not for the purpose of proving that he sold to Laughter." As heretofore stated, the court permitted the license and the oral evidence to be regarded as circumstances tending to support the direct evidence of the alleged illegal sale, and, for the reasons given as to the admission of the evidence, the effect allowed it in the charge must be upheld.

Defendant further contended that the court did not properly caution the jury in reference to the testimony of the principal witness for the prosecution, and especially in the failure to give

certain prayers for instructions, as follows: "In weighing the testimony of the witness Laughter greater care should be exercised in relation to the testimony of a detective employed in hunting up evidence, who is interested in or employed to find evidence against the accused, than in other cases, because of the natural and unavoidable tendency and bias of the mind of such person against the person whom the witness has been employed as a detective, and his evidence should be weighed with greater care than that given by a disinterested witness." And, second, the testimony of a detective must be scrutinized with unusual caution. These prayers have been upheld and almost in this exact language by courts of approved authority, but usually there were facts *ultra* tending to impeach the testimony of the witness, and in one of them, certainly, the detective was shown to have a pecuniary interest in the result of the verdict; and it was no doubt in reference to these facts that the prayer was approved, and not with a view of establishing any hard and fast formula as to the evidence of detectives. The general rule is that the jury should be directed to scrutinize the evidence of a paid detective and make proper allowances for the bias likely to exist in one having such an interest in the outcome of the prosecution and in reference to any other relevant facts calculated to influence the testimony of the witness; but where this is done, the exact terms in which the rule may be expressed are left, by our decisions, very largely in the discretion of the trial judge. In the present case, while his Honor told the jury that it "was commendable on the part of a detective or sheriff or other officer of the law to use all reasonable and proper means in the apprehension of those who are violating the law of the land, and when they do so in that spirit that will enable the law to place its hands upon offenders and violators, it is to the credit rather than the discredit of the persons so acting." He said, further, and in this immediate connection: "But when one acts in the capacity of a private detective or public officer, it becomes the duty of the jury to scrutinize the testimony of such person, and to say whether or not the testimony of that person so acting is biased, whether the interest he serves has influenced him to an extent that would

reflect upon or affect his testimony." And we are of opinion that this was all the caution that the facts of the present case required. *S. v. Black,* 121 N. C., 578; *S. v. Barber,* 113 N. C., 711.

Defendant excepted, further, that the court told the jury, "If you are a prohibitionist, you must try this man as you would try an antiprohibitionist, and if you are an antiprohibitionist you must try him under the law and the evidence as if you were a prohibitionist." While this statement, taken by itself, might be to some extent misleading, the excerpt does not give a correct impression of his Honor's charge nor of this particular portion of it. In connection with this matter, the entire charge of the court was as follows: "In passing upon the guilt or the innocence of the defendant, it is not a question of privilege with the jury as to what they will do, but it is a matter of duty and obligation which rests upon them to try the defendant under the evidence, and convict or acquit him, as you shall find. Juries sitting in the trial of a case of this kind, involving an investigation into the illicit sale of spirituous liquor, are not privileged to try the case upon any individual ideas which they may have, as bearing upon the question of the sale of spirituous liquor. In other words, the ideas of any individual juror, as to whether the law is wise or unwise, is not to be considered. If you are a prohibitionist, you must try the man as you would try him if you were an antiprohibitionist; if you are an antiprohibitionist, you must try him under the law and evidence as if you were a prohibitionist. In other words, you cannot ingraft upon your verdict any personal or individual views you may entertain upon the liquor law, but you must try him, defendant, as you would any other person for the violation of any statute law which we find upon the books of our State, divesting yourself of any prejudice and take the evidence as it comes from the witnesses and the law as it is given to you by the court, and determine the guilt or the innocence of the defendant. Now, in that spirit you go about this investigation, and return a verdict, as you are in duty bound to do, of guilty or not guilty, as you shall find." Con-

sidering the statement as a whole, and it is right so to consider it *(S. v. Exum,* 138 N. C., 599; Thompson on Trials, sec. 2407), it directs the jury, in apt and forceful language, to divest themselves of all prejudice and give the defendant a fair and impartial trial under the law and on the testimony, and on that alone, and the jury must have so understood it. After giving the case most careful consideration, we find no reversible error, and the judgment against the defendant is affirmed.

No error.