FILED
08/07/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 3, 2025

**STATE OF TENNESSEE v. IVAN ANTJUAN BURLEY**

**Appeal from the Criminal Court for Sumner County**
**No. 2016-CR-379      Louis W. Oliver, III, Chancellor**

———————————

**No. M2023-01604-CCA-R3-CD**

———————————

The Defendant, Ivan Antjuan Burley, appeals from his Sumner County conviction for attempted possession with the intent to sell or deliver twenty-six grams or more of cocaine, a Schedule II controlled substance. He contends that the trial court erred by admitting evidence of his contemporaneous drug-related activities in Davidson County in violation of Tennessee Rule of Evidence 404(b). Additionally, the Defendant raises several other constitutional and evidentiary claims. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which JILL BARTEE AYERS and JOHN W. CAMPBELL, SR., JJ., joined.

Lawren B. Lassiter, Gallatin, Tennessee (on appeal and elbow counsel at trial), for the appellant; and Ivan Antjuan Burley, Nashville, Tennessee, Pro Se (at trial).

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Ray Whitley, District Attorney General; and Andrea W. Green, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.      FACTUAL AND PROCEDURAL HISTORY

On October 19, 2015, personnel with the Eighteenth Judicial District Drug Task Force in Sumner County ("Task Force") responded to a report of a suspicious package received at the UPS Store on Glenbrook Way in Hendersonville. This package had been

sent to the mailbox rented by the Defendant in his own name, but it was addressed to a beauty supply business. A search warrant was obtained to open the package after a canine officer displayed a positive alert, and the subsequent search revealed a paper envelope inside the box containing dryer sheets and four vacuum-sealed bags that held a white powdery substance. Law enforcement confiscated the package when this substance field-tested positive for cocaine, which was later lab-confirmed to be cocaine in the amount of 124.88 grams. Further investigation into the Defendant's activities revealed that he resided in Davidson County, he rented six total mailboxes at UPS Stores in both Sumner and Davidson counties, and he regularly traveled to a storage unit he rented in Davidson County after picking up packages from these mailboxes. Search warrants were obtained for the Defendant's residence and storage unit, and the subsequent searches revealed large amounts of cocaine and materials consistent with the packaging and selling of illegal drugs.

In June 2016, a Sumner County grand jury returned a presentment charging the Defendant with the Class C felony offense of attempted possession with the intent to sell or deliver twenty-six grams or more of cocaine, a Schedule II controlled substance. *See* Tenn. Code Ann. §§ 39-12-101(a)(3); -17-417(a)(4), (i)(5). The Defendant, then represented by counsel, filed a motion to exclude the evidence obtained as a result of the execution of the search warrants in Davidson County as unfairly prejudicial propensity evidence under Tennessee Rule of Evidence 404(b). The trial court held a pretrial hearing on this motion on February 12, 2018.

At the hearing, Investigator Jason Arnold with the Task Force testified that personnel had first responded to the Glenbrook Way UPS Store on October 5, 2015, regarding the report of a suspicious package sent to the Defendant's mailbox. Pursuant to UPS Store policy as outlined in the rental agreement signed by the Defendant, the manager of the store had opened the package and found it to contain a large quantity of white powder and alerted law enforcement. The responding canine officer did not alert on this package, however, and it was repackaged for delivery to the Defendant's mailbox. The same circumstances on October 19, 2015—this time, with the same canine officer alerting on the package—led to the confiscation of the Sumner County package found to contain approximately 123 grams of cocaine. Both of the sender and recipient business names listed on the package were determined to be fictitious, but the Defendant had rented the mailbox at this UPS Store using his own identification. The Defendant was observed on surveillance footage entering the UPS Store before it opened the following day and checking his mailbox. When he left empty-handed, he called the store to inquire about his missing package.

Additional investigation revealed that the Defendant, within the prior year, had received approximately fifty-eight packages at the various UPS Stores where he rented mailboxes, all weighing one pound, one ounce, "which would equate to roughly seven kilos of cocaine, if they were all filled the same way [as the confiscated Sumner County package]." Search warrants were executed on the Defendant's residence and storage unit on February 8, 2016. At the Defendant's residence, the search revealed a large amount of cocaine, much of which "was in a vacuum sealed bag that was similar to what [law enforcement] found in the [confiscated Sumner County] package." Additionally, officers discovered five loaded firearms, handwritten notes detailing the Defendant's various UPS Store mailboxes, approximately five pounds of "vacuum sealed" marijuana, and "approximately $30,000 in U.S. currency, in different stacks, rubber banded" found in the same room as the cocaine. The search of the Defendant's storage unit revealed vacuum sealing bags, a vacuum sealer with a portable generator as a power source, a contract for one of the Defendant's Sumner County UPS Store mailbox rentals, a loaded handgun, and "roughly, a seven-pound brick of marijuana."

At the conclusion of the proof and following argument by the parties, the trial court made the following findings of fact:

> The testimony revealed that on [October 5, 2015], a manager at the [UPS Store] in Hendersonville, contacted Sumner County Drug Task Force about a suspicious package. The drug dog was brought out and there was no alert.

> Further, on October 19th, 2015, it was the same complaint, and [the Task Force] went out again. There was an alert, and there was a search warrant, and found in the [package sent to the Defendant's] mailbox [was] 123 grams of cocaine.

> There was a fictitious business that had supposedly sent the package to the Defendant's mailbox and it was opened.

> The proof also reflects that, although, the [UPS Store] was closed the next day, the Defendant showed up the next day to try to pick up his mail. And there are photographs, surveillance pictures of that.

> The proof also shows that the Defendant had six different [mailboxes]; two in Sumner [County] and four in Davidson County. Approximately, [fifty-eight] total deliveries in the years 2015 and 2016.

- 3 -

. . . .

Now, on [February 8, 2016], search warrants were served in Davidson County. One at the residence of the Defendant, where there were three and a half ounces of cocaine found; vacuum sealed bags, similar to those found at [the UPS Store in Sumner County]; [UPS] boxes were found similar to those that were packaged and delivered to [the UPS Store in Sumner County]; handwritten notes of addresses of [the Defendant's] mailboxes; and five pounds of cocaine; and firearms were found in the house, along with $30,000 in U.S. currency.

Now, I understand that vacuum sealed bags are used in different ways, packaging food, but they are also used in transporting illegal drugs. And it's relevant to that extent.

Immediately after reciting its findings of fact, the trial court proceeded to examine them in the context of Tennessee Rule of Evidence 404(b):

Now, I find the following conclusions of law: The Defendant has accurately stated what is required in 404([b])(1), (2), (3), and (4).

Number One, the Court must hold a hearing outside the jury's presence. And we've done that here [today]. . . .

The Court must determine that a material issue exists, other than conduct conforming with a character trait and must upon request, state on the record the material issue, the ruling, and the reasons for admitting the evidence.

Well, in looking at this, I find that there is an on[]going conspiracy here, a common scheme or plan. That this part [in] Sumner County, was part of a larger conspiracy.

And as the General stated, not only do we have a continuing conspiracy and a common scheme or plan because it's a repeated thing, but Hendersonville [in Sumner County] is connected with the final destination in Davidson County, before it goes out any further. And that common thread there is the Defendant[.]

We have a common scheme and a continuing conspiracy here, based on [October 5, 2015, October 19, 2015, and October 20, 2015], all overt acts that would be admissible in any conspiracy case.

And they also show that a material . . . issue[] exist[s], other than showing that the Defendant has a character trait in conformance with a distribution of cocaine[.]

. . . .

This proof shows intent. It shows lack of accident or mistake. It shows knowledge.

. . . .

I find that the proof of the continuing conspiracy and what happened on February 8th, [2016], in Davidson County, . . . is clear and convincing.

Lastly, does the probative value outweigh the danger of unfair prejudice? The answer is no. The probative value outweighs the prejudicial effect here.

This is evidence that goes straight to the heart of [the] issues, and we're dealing with a continuing conspiracy. Unlike other cases . . . this is something that this Court must consider.

The trial court denied the Defendant's motion, and its ruling was memorialized by a written order filed April 13, 2018 ("2018 written order"), which defense counsel prepared at the trial court's request:

Following a hearing on the matter and argument from counsel, the Court held that, considering Rule 404(b) of the Tennessee Rules of Evidence, the Court had satisfied the four[-]part standard of the rule in that a hearing was held outside the presence of the jury and that a material issue other than conduct conforming with a character trait [sic]. The material issue was the court's finding that there is an ongoing conspiracy, a common scheme or plan in that the package received in Sumner County is part of a larger conspiracy.

Further, Hendersonville is connected to Davidson County, the final destination of the narcotics intercepted in Sumner County and that the package that was received on October 5, 2015[,] that drug dogs did not alert on, along with the package intercepted on October 19, 2015[,] that the drug dogs did alert on and Defendant checking his mail on October 20, 2015[,] show that a common scheme exists and show a material issue other than conduct conforming with a character trait.

The court further found that the acts of the conspiracy show intent, lack of mistake and knowledge of the scheme. The events that took place in Davidson County would be admissible in Sumner County and the events that took place in Sumner County would be admissible in Davidson County.

The Court found that the proof was shown by clear and convincing evidence . . . derived from a crime committed [in Davidson County] simultaneous to the crime alleged in Sumner County.

Therefore, the Court in this matter held that the evidence from the untried and pending Davidson County cases was close enough in time and close enough in scheme to make it admissible in the Sumner County Cases and available for the State to present to the jury.

The Defendant proceeded to trial with the assistance of counsel, but a mistrial was entered when the jury could not reach a unanimous verdict. Following this, the Defendant retained new counsel, who filed a new motion to exclude the Davidson County evidence. At a hearing on July 7, 2022, the trial court declined to hear the motion and informed the Defendant's new counsel that the issue had already been ruled upon. Defense counsel then requested clarification on the trial court's previous ruling, and the trial court read aloud from its 2018 written order. The trial court thereafter stood on its previous ruling and took defense counsel's repeated request for more detail under advisement until trial. The trial court also noted that any new issues could be addressed at trial in the form of a jury-out hearing, referencing a new motion filed by the State to introduce the Defendant's financial and travel records.

Prior to the retrial of the Defendant's case, the original trial judge recused himself from further participation.[1] Thereafter, the Defendant waived his right to counsel and

---

[1] The Honorable Dee David Gay presided over the evidentiary hearing at issue in this appeal. We refer to Judge Gay as the "original trial judge" and Chancellor Oliver as the "successor judge" in this opinion whenever such distinction is necessary. The "trial court" is used collectively.

proceeded to trial pro se in front of the successor judge. In an order filed on May 8, 2023, the successor judge ruled that the Defendant's financial and commercial travel records would be admissible at trial as additional evidence of a common scheme or plan but "declined to reconsider the previous ruling[s]" of the original trial judge as to the previously admitted Davidson County evidence.[2] The successor judge's only deviation from these previous rulings occurred during a jury-out hearing at the subsequent retrial, wherein the introduction of evidence of the multiple firearms seized from the Defendant's residence and storage unit was prohibited as unfairly prejudicial.

The proof introduced at trial expanded on that presented at the pretrial hearing before the original trial judge. Investigator Arnold described the confiscated Sumner County package as weighing one pound, one ounce, and he noted that it had been sent in a flat-rate shipping box via two-day priority mail. It had been "addressed from Ellen Albright, Essential Beauty, [at an] apartment on Quamasia Avenue in McAllen, Texas; [and was] being shipped to Natural Bliss Beauty Supply at 1050 Glenbrook Way, Suite 480, Number 312 – which [wa]s the [D]efendant's mailbox number – in Hendersonville, Tennessee." The Defendant called the UPS Store, twice, immediately after it opened the day after the confiscation to determine why his package had not been delivered to his mailbox, and he was told to call back later to see if it had arrived. After he never received this package, the Defendant terminated his mailbox rental at this UPS Store.

Law enforcement's investigation into the Defendant's activities, which was prompted by the discovery of cocaine within the confiscated package, included surveillance by undercover officers at the Defendant's home in Davidson County and a tracking device being placed on his car. These efforts revealed that the Defendant regularly traveled to a storage unit rented in his name immediately after picking up packages from his various UPS Store mailboxes. The execution of the subsequently obtained search warrant at the Defendant's storage unit yielded the discovery of a vacuum sealer plugged into a portable generator, dryer sheets, shipping boxes consistent with the packages received at the various UPS Store mailboxes, and a spoon and digital scale, both of which field-tested positive for cocaine residue. During the search of his residence, the Defendant directed officers to a hidden key that unlocked a closet, which was "the only locked room in the residence." Inside the closet, officers discovered "stacks" of cash totaling approximately $27,000, numerous handwritten notes with the names of several of the fictitious businesses listed on the packages delivered to the Defendant's UPS Store mailboxes, and a clear tote containing a large amount of cocaine, much of which was

_____

[2] The order indicates that additional proof was presented at a hearing held prior to entry of this written order, but a transcript of this hearing was not included in the record on appeal.

packaged in vacuum-sealed bags.  In the garage of the residence, officers discovered an additional sizeable quantity of cocaine hidden in the false bottom of a box of Oreo cookies.

After the execution of the search warrant, law enforcement examined the Defendant's financial and commercial travel records.  These records revealed that the Defendant frequently deposited large sums of cash at multiple financial institutions on the same day, but the amount was always less than $10,000 at any one institution, amounts that did not require these institutions to engage in mandatory reporting to authorities.  He regularly withdrew the same amounts he had deposited within a day or two, but the withdrawals always occurred in other states.  These withdrawals coincided with the timing of the Defendant's travel to those states.  One to two times per month, the Defendant flew to cities near the Mexican border in Texas or California, rented a car, and then boarded a return flight to Nashville within forty-eight hours.  A few days after each of these trips, packages were delivered to his various mailboxes at the UPS Stores in Sumner and Davidson counties.  All of these packages were shipped from McAllen, Texas, Harlingen, Texas, or the greater Los Angeles area in California.  The cities listed on the senders' return addresses matched whichever of the cities near the Mexican border from which the Defendant had returned just prior to the packages' arrivals following each trip.  Between April 2015 and February 2016, eighty-six of these packages were delivered to the mailboxes the Defendant rented at various UPS Stores in Sumner and Davidson counties.

The jury convicted the Defendant as charged, and he was sentenced to serve ten years in the Tennessee Department of Correction.  His subsequent motion for new trial was denied, and the Defendant now timely appeals.

## II.    ANALYSIS

On appeal, the only issue properly presented for our review relates to the admissibility of the Davidson County evidence in the Defendant's Sumner County trial.  The Defendant contends that the trial court did not substantially comply with the procedural requirements of Tennessee Rule of Evidence 404(b), and he urges us to conduct a de novo review.  Alternatively, the Defendant contends that, if the trial court complied with the procedural requirements, it nevertheless abused its discretion by admitting evidence that he asserts was "irrelevant" and served only to portray the Defendant "as a drug kingpin with a propensity to commit drug-related crimes."  The State responds that the trial court substantially complied with the procedural requirements outlined in Rule 404(b), and it did not abuse its discretion by admitting the evidence after finding that it demonstrated a common scheme or plan, as well as the Defendant's intent, lack of mistake, and knowledge regarding the contents of the Sumner County package.

## A. Evidence Seized in Davidson County

The admission of evidence of other bad acts by an individual is governed by Tennessee Rule of Evidence 404(b). Generally speaking, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" Tenn. R. Evid. 404(a). Such evidence may, however, be admitted for other purposes if the following conditions are met prior to admission of this type of proof:

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
>
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). "Other purposes" include the defendant's motive, intent, guilty knowledge, identity, absence of mistake or accident, a common scheme or plan, completion of the story, opportunity, and preparation. *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004) (appendix). When the trial court substantially complies with the procedural requirements of Rule 404(b), this court will overturn the trial court's ruling only when there has been an abuse of discretion. *State v. Thacker*, 164 S.W.3d 208, 240 (Tenn. 2005).

### 1. Procedural Requirements

The Defendant asserts that the trial court, in its 2018 written order, failed to "scrutinize" the evidence, did not utilize a clear and convincing standard, and failed to clarify the reasons for admitting the evidence, thereby violating the requirements outlined in Tennessee Rule of Evidence 404(b). The State responds that the trial court complied with the procedural requirements of Rule 404(b) and articulated its reasoning in "lengthy detail" on the record in both its written order and at the hearing regarding the admissibility of the evidence.

In raising this issue on appeal, the Defendant relied only upon the 2018 written order to establish his claim of procedural inadequacy. However, the 2018 written order confirms that (1) a hearing was held outside of the presence of the jury; (2) the trial court determined that a material and non-character trait related issue existed, identified that issue, and briefly recited the reasoning for this determination; and (3) the trial court noted that it utilized the clear and convincing evidence standard in its determination of admissibility. *See* Tenn. R. Evid. 404(b). Although the 2018 written order did not explicitly weigh the probative value of the evidence against the danger of unfair prejudice—the only requirement of Rule 404(b) absent from the order—the trial court articulated its finding to this point on the record at the hearing, the transcript of which was included in the appellate record for our consideration. *See State v. Conner*, 919 S.W.2d 48, 49 n.3 (Tenn. Crim. App. 1995) (in the probation revocation context, noting that "transcription of the trial court's oral findings made during the hearing, however, amounts to substantial compliance with [the] procedural requirement [of making a written statement of evidence and reasoning relied upon in its ruling]" (citing *State v. Delp*, 614 S.W.2d 395, 397 (Tenn. Crim. App. 1980))); *State v. Bowers*, No. E2000-00585-CCA-R3-CD, 2001 WL 15836, at *1 (Tenn. Crim. App. Jan. 9, 2001) (recognizing this court's ability to review the entire appellate record whenever necessary to "interpret and clarify" a trial court's ruling). Thus, even if we concluded the trial court's written order was inadequate under Rule 404(b), we could not do the same for the trial court's point-by-point articulation at the hearing relating its recognition of, and adherence to, the Rule 404(b) requirements.

The Defendant additionally argues that the only means by which a trial court could find clear and convincing evidence of a prior bad act is through proof of a criminal conviction regarding such conduct, relying on *State v. Whitman*, No. E2023-01050-CCA-R3-CD, 2024 WL 4003680, at *10 (Tenn. Crim. App. Aug. 30, 2024), *perm. app. denied* (Tenn. Jan. 24, 2025). However, in *Whitman*, the prior bad acts alleged were convictions required to prove an element of the charged offense at trial, and the accompanying error was the introduction of specific proof of those convictions instead of permitting the defendant to stipulate to them. *Id.* at *11. Moreover, this court's determination that the procedural requirements of 404(b) had not been met in *Whitman* was predicated on the lack of proof of the convictions introduced at the hearing on their admissibility, the trial court's failure make any express finding that they had been proven by clear and convincing evidence, and its failure to conduct a weighing analysis regarding the probative value and prejudicial effect. *Id.* at *10. The instant case is easily distinguishable from *Whitman*, rendering this argument meritless and inapplicable.

For these reasons, we conclude that the trial court substantially complied with the procedural requirements of Rule 404(b). We therefore review the trial court's admission of the disputed evidence for abuse of discretion. *See Thacker*, 164 S.W.3d at 240.

## 2. Admissibility of the Evidence

The Defendant contends that evidence of his activities in Davidson County was irrelevant to his Sumner County offense. He cites to *State v. Moore*, 6 S.W.3d 235, 239 n.6 (Tenn. 1999), for the proposition that, in order for evidence of a common scheme or plan to be admissible, "[e]ach offense alleged to be part of the common scheme or plan must be relevant to some specific issue at trial, such as identity." The State responds that the materiality of the evidence of the common scheme was established by its closeness in time and proximity to the offense in this case. The State cites to *State v. Elendt*, 654 S.W.2d 411, 414 (Tenn. Crim. App. 1983), for the proposition that similar evidence of a defendant's ongoing marijuana sales "was [] admissible to show the [defendant's] intent and guilty knowledge, as well as his larger, continuing scheme to sell contraband."

Evidence of other crimes, wrongs, or acts distinct from the offense or offenses on trial may be admissible for purposes other than showing conformity with a character trait, including evidence that constitutes clear and convincing proof of a common scheme or plan. *See* Tenn. R. Evid. 404(b); *Berry*, 141 S.W.3d at 582. Tennessee recognizes three categories of common scheme or plan evidence: "(1) offenses that reveal a distinctive design or are so similar as to constitute 'signature' crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction." *Moore*, 6 S.W.3d at 240.

The trial court specifically found that the disputed evidence in this case was proof of a "continuing conspiracy," which is a recognized category for the use of this exception. *See id.* The Defendant argues that the evidence was inadmissible because, he contends, evidence of the common scheme or plan relied on by the trial court was not relevant, as the Defendant's identity was not at issue in this trial. While the Defendant's reliance on *Moore* for this proposition is correct insofar as it goes—that the evidence must be "relevant to some specific issue at trial, *such as* identity" to be admissible—the example it includes does not foreclose relevance based on issues other than identity. *Id.* at 240 n.6 (emphasis added). In this case, the Davidson County evidence showing a common scheme or plan was extremely relevant to the specific issues of the Defendant's intent to sell or deliver cocaine and his attempt to possess the Sumner County package that contained cocaine—both of which were material components of the charge against him. Further, in addition to finding the common scheme or plan exception applicable, the trial court found

that the Davidson County evidence established the Defendant's knowledge of the contents of the confiscated Sumner County package, his intent to sell the same, and the lack of accident or mistake regarding his intended receipt of the package. *See Berry*, 141 S.W.3d at 582.

As noted above, the trial court articulated the necessary findings governing the admissibility of this evidence, and the record supports those findings as well as its conclusions of law based upon them, including its determination that the probative value outweighed the potential prejudicial effect. *See* Tenn. R. Evid. 404(b); *see also Elendt*, 654 S.W.2d at 414 ("The evidence [of a continuing scheme to sell illegal drugs] also rebutted any idea of accident or mistake. The admission of this evidence was not error."); *State v. White*, No. M2011-01357-CCA-R3-CD, 2012 WL 4470652, at *9 (Tenn. Crim. App. Sep. 27, 2012) (concluding that the trial court properly exercised its discretion by admitting evidence of the defendant's sale of crack cocaine in another county to establish the defendant's possession of crack cocaine with intent to sell it in the case on trial). Accordingly, the trial court did not abuse its discretion in this regard, and the Defendant is not entitled to relief.

### B. Additional Arguments

The Defendant's brief also contains a section wherein he challenges various evidentiary rulings and proceedings in the trial court unrelated to his Rule 404(b) claim. Here, the Defendant attempts to raise the following contentions for our consideration: (1) the search of the Sumner County package was unconstitutional because the manager of the UPS Store was acting as an agent of the State for purposes of the Fourth Amendment; (2) the Defendant's rights under the Confrontation Clause were violated when the State failed to produce the UPS Store manager or any of its other employees to testify at trial; (3) the Defendant's due process rights were violated, as his conviction was obtained based on false testimony by Investigator Arnold; (4) exculpatory evidence was suppressed in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), when the trial court excluded a recorded interview between the Defendant's private investigator and the UPS Store manager, which the Defendant had produced to the State before he offered it as evidence at trial; (5) the trial court improperly allowed hearsay testimony by Investigator Arnold; (6) the chain of custody of the confiscated Sumner County package was not sufficiently documented or established on the record or at trial; and (7) based upon the preceding contentions, the evidence was insufficient to the convict the Defendant at trial. Contrary to the requirements of the Tennessee Rules of Appellate Procedure and the rules of this court, these arguments were not designated as issues, contained no references to the record, mostly failed to identify the applicable standards of review, and included only scant citation to authority.

Additionally, while the Defendant complains of numerous violations, he does not identify the relief sought from this court for any of these claims. They are thus waived for insufficient briefing. *See* Tenn. R. App. P. 27(a); Tenn. Ct. Crim. App. R. 10(b).

### III. CONCLUSION

Based upon the foregoing and consideration of the record as a whole, we affirm the judgment of the trial court.

s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE